**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>    Plaintiff,<br><br>v.<br><br>**IVAN JOSEPH SOTO (01),**<br><br>    Defendant. | **Case No. 15-40040-01-DDC** |

## MEMORANDUM AND ORDER

This matter comes before the court on pro se[1] prisoner Ivan Soto's Motion for Compassionate Release (Doc. 88). Mr. Soto seeks a sentence reduction to time served because of the COVID-19 pandemic. *See generally* Doc. 88; Doc. 94 at 1–2. The government has responded (Doc. 91) and the Federal Public Defender's Office has filed a Reply for Mr. Soto (Doc. 94). For reasons explained below, the court denies Mr. Soto's motion.

**I.   Background**

In May 2015, a grand jury returned an Indictment charging Mr. Soto with two counts of conspiring to possess with intent to distribute methamphetamine. Doc. 1 at 1–2. If proved beyond a reasonable doubt, these charges would violate 21 U.S.C. §§ 841(a)(1) and (b)(1)(A), 846, and 18 U.S.C. § 2. *Id.* at 2. In September 2015, Mr. Soto entered a plea agreement with the government. Docs. 58 & 59. He pleaded guilty to Count 1's conspiracy charge. Doc. 59 at 1–2. The Presentence Investigation Report ("PSR") calculated a total offense level of 29 and a criminal history category of II, producing a Guidelines sentencing range of 97 to 121 months'

---

[1] Because Mr. Soto proceeds pro se, the court construes his filings liberally and holds them to a less stringent standard than formal pleadings drafted by lawyers. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). But the court does not assume the role of advocate for a pro se litigant. *Id.*

imprisonment.  Doc. 69 at 14 (PSR ¶ 72).  In February 2016, the court sentenced Mr. Soto to 120 months' imprisonment followed by five years of supervised release.  Doc. 78 at 2–3 (Judgment).

Mr. Soto asserts that he currently is incarcerated at FCI Danbury in Connecticut.  Doc. 88 at 1.  He asserts that he has a number of health conditions—obesity, hypertension, and a "family history of diabetes"—placing his health at serious risk should he contract the COVID-19 virus.  *Id.* at 2.  And, he asserts, he has served 64 months of his 120-month custody sentence.  Doc. 94 at 11.

## II.   Legal Standard

Binding authority from our Circuit establishes that a "'district court is authorized to modify a [d]efendant's sentence only in specified instances where Congress has expressly granted the court jurisdiction to do so.'"  *United States v. White*, 765 F.3d 1240, 1244 (10th Cir. 2014) (quoting *United States v. Blackwell*, 81 F.3d 945, 947 (10th Cir. 1996)).  Title 18 U.S.C. § 3582(c)—commonly called the compassionate release statute—permits a court to modify a term of imprisonment but only if certain exceptions apply.  For many years, these exceptions required the Bureau of Prisons ("BOP") to bring a motion on a defendant's behalf.  But in 2018, the First Step Act modified the compassionate release statute, and authorized a defendant to file his own motion for relief.  First Step Act of 2018, Pub. L. No. 115-391, § A 603(b)(1), 132 Stat. 5194 (2018).  This amendment authorized an inmate to make such a motion, but only after he "has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on [his] behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . ."  18 U.S.C. § 3582(c)(1)(A).

Mr. Soto asserts that he has asked his warden for compassionate release.  Doc. 88 at 1.  The warden denied his request.  Doc. 91-1 (warden's denial of Mr. Soto's request for

compassionate release dated April 28, 2020). Mr. Soto filed his motion in federal court on June 22, 2020. *See* Doc. 88. Because more than 30 days elapsed between Mr. Soto's request to the warden and his motion, the government concedes that he has exhausted his administrative remedies. Doc. 91 at 7.

Some courts have concluded § 3582(c)(1)(A)'s exhaustion requirement is jurisdictional. *See, e.g.*, *United States v. Walker*, No. 13-10051-EFM, 2020 WL 2101369, at *2 (D. Kan. May 1, 2020) ("The administrative exhaustion requirement is jurisdictional and cannot be waived."); *United States v. Read-Forbes*, No. 12-20099-01-KHV, 2020 WL 1888856, at *3–4 (D. Kan. Apr. 16, 2020) (deciding that exhaustion requirement is jurisdictional based on text, context, and relevant historical treatment of § 3582(c)'s various subsections). But, as explained next, other courts have concluded § 3582(c)(1)(A)'s exhaustion requirement is a claim-processing rule and not jurisdictional. The court adopts the claim-processing approach.

In *United States v. Alam*, 960 F.3d 831 (6th Cir. 2020), the Sixth Circuit treated § 3582(c)(1)(A)'s exhaustion requirement as a claim-processing rule, not a jurisdictional bar. *Id.* at 832–34. Although claim-processing rules don't implicate the court's subject matter jurisdiction, the court must enforce them when properly invoked. *Id.* at 833. But, if not invoked, claim-processing rules are subject to waiver and forfeiture. *Id.* at 834; *see also United States v. Spaulding*, 802 F.3d 1110, 1130–34 (10th Cir. 2015) (Gorsuch, J., dissenting) (explaining why "§ 3582(c) doesn't strip the district court of any of its preexisting post-judgment jurisdiction and is instead and again a claim-processing rule").

The Tenth Circuit hasn't yet decided whether § 3582(c)(1)(A)'s exhaustion requirement is jurisdictional. So, the court must predict how our Circuit would decide the question. The court finds the Sixth Circuit's decision highly persuasive and the court predicts the Tenth Circuit

3

would adopt its reasoning. Consistent with *Alam*, the court treats § 3582(c)(1)(A)'s exhaustion requirement as a claim-processing rule.

Because Mr. Soto waited 30 days after asking his warden to file a motion in federal court, he has satisfied the exhaustion requirement of § 3582(c)(1)(A). And, even if he hasn't, the government explicitly has waived any objections to the exhaustion requirement. So, the court now turns to the substance of Mr. Soto's motion.

### III. Discussion

#### A. The court exercises its discretion when deciding whether "extraordinary and compelling reasons" exist.

Section 3582(c)(1)(A) authorizes district courts to reduce a term of imprisonment if, "after considering the factors set forth in Section 3553(a) to the extent that they are applicable," the court finds that (i) "extraordinary and compelling reasons warrant such a reduction" and (ii) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).

The Sentencing Commission's applicable policy statement is found in U.S.S.G. § 1B1.13. *United States v. Beck*, 425 F. Supp. 3d 573, 578 (M.D.N.C. 2019). As pertinent here, this policy statement provides that the court may reduce a term of imprisonment, after considering the § 3553(a) factors, if (1) "[e]xtraordinary and compelling reasons warrant the reduction," (2) "[t]he defendant is not a danger to the safety of any other person or the community," and (3) "[t]he reduction is consistent with this policy statement." U.S.S.G. § 1B1.13.

Application Note 1 to § 1B1.13 provides that extraordinary and compelling reasons exist "under any of the [four] circumstances set forth below" in (A) through (D). *Id.* § 1B1.13 application notes 1. Subdivision (A) of Note 1 provides that the medical condition of a prisoner may qualify him for compassionate release, if (i) he is suffering from a terminal illness, or (ii) he

4

is suffering from a serious physical or medical condition that "substantially diminishes" his ability to provide self-care within the prison and he is not expected to recover. *Id.* § 1B1.13 application notes 1(A). Subdivisions (B) and (C) apply to age and family circumstances not invoked here. Subdivision (D) supplies a catchall provision: it applies when "[a]s determined by the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.* § 1B1.13 application notes 1(D).

Mr. Soto plainly does not qualify under two of the four subdivisions in Note 1. He is not 65 years old (Subdivision (B)) and nothing suggests that the "family circumstances" addressed in Subdivision (C) apply. He also does not qualify under either of the two prongs described in Subdivision (A). Nothing suggests Mr. Soto "is suffering from a terminal illness"—prong (i)— or, as prong (ii) requires, that he has contracted a "serious physical or medical condition" and he "is not expected to recover from" it.[2] § 1B1.13 application notes 1(A).

This leaves Subdivision (D). The guidance in this subsection advises that § 1B1.13 applies when "[a]s determined by the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)" of application note 1.[3] *Id.* § 1B1.12 application notes 1(D).

---

[2]  Prong (ii) also applies to "serious functional or cognitive impairment" and "deteriorating physical or mental health because of the aging process." § 1B1.13 application notes 1(A)(ii). Mr. Soto's motion does not invoke these alternatives.

[3]  As explained above, in Section II, § 3582 used to permit the BOP—but not inmates—to file a compassionate release motion. But the First Step Act broadened § 3582, so an inmate now can file a motion. *See* First Step Act of 2018, Pub. L. No. 115-391, § A 603(b)(1), 132 Stat. 5194 (2018). The Sentencing Commission hasn't revised § 1B1.13 of the Guidelines since that amendment and so, the language used in this Guidelines provision still requires a motion by the BOP. *See United States v. Jackson*, No. 08-20150-02-JWL, 2020 WL 2812764, at *3 (D. Kan. May 29, 2020).

A few courts have ruled that only the BOP may invoke the catchall provision of subdivision (D). *United States v. Jackson* summarized the reasoning of one such decision:

> Congress gave the Sentencing Commission the mandate to decide what constitutes an extraordinary and compelling reason; the [First Step Act] did not expand the criteria for finding such a reason, but merely allowed defendants to file motions; there can be no relief under this statute without consistency with the policy statement; and the policy statement does not presently provide for a court determination of other reasons.

*United States v. Jackson*, No. 08-20150-02-JWL, 2020 WL 2812764, at *3 (D. Kan. May 29, 2020) (citing *United States v. Lynn*, No. 89-0072-WS, 2019 WL 3805349, at *2–4 (S.D. Ala. Aug. 13, 2019)). But an "overwhelming majority of courts" have rejected this approach. *Id*. They instead have "concluded that a court may make the necessary determination that other circumstances warrant relief under this statute." *Id*. (citations omitted). In other words, "[w]hile the old policy statement provides helpful guidance, it does not constrain the [c]ourt's independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction under § 3582(c)(1)(A)(i)." *Beck*, 425 F. Supp. 3d at 579; *see also Jackson*, 2020 WL 2812764, at *3 (assuming, for purposes of deciding the motion, that court is not limited to circumstances set forth in subdivisions (A) through (C)); *United States v. O'Bryan*, No. 96-10076-03-JTM, 2020 WL 869475, at *2 (D. Kan. Feb. 21, 2020) ("In the wake of the First Step Act, numerous courts have recognized the court can determine whether extraordinary and compelling reasons exist to modify a sentence—and may do so under the 'catch all' provision . . . ."); *United States v. Cantu*, 423 F. Supp. 3d 345, 352 (S.D. Tex. 2019) (concluding that the correct interpretation of § 3582(c)(1)(A) is that when a defendant brings a motion for a sentence reduction under the amended provision, the court can determine whether extraordinary and compelling reasons—outside those delineated in subdivisions (A)–(C)—warrant granting relief).

The court joins this prevailing view, concluding that it may decide whether "extraordinary and compelling reasons" warrant compassionate release.

### B. Mr. Soto has not established that "extraordinary and compelling reasons" warrant compassionate release.

Mr. Soto contends he is morbidly obese and that he has hypertension and a family history of diabetes. Doc. 88 at 2; Doc. 94 at 6–7. The government concedes that Mr. Soto's medical conditions "qualify as extraordinary and compelling circumstances for this [c]ourt's consideration of a sentence reduction." Doc. 91 at 14. But, the government argues, the court should not "reward" Mr. Soto with a sentence reduction. *Id.* at 15. Mr. Soto replies that early release "does not offend the interests of justice, nor does it increase the risk [he] will reoffend upon release." Doc. 94 at 10.

To be sure, it is regrettable that Mr. Soto is incarcerated during this pandemic. It is also regrettable that he suffers from various medical conditions. But the court isn't convinced that this combination of circumstances qualifies him for release. The court reaches this conclusion "after considering the factors set forth in [18 U.S.C.] § 3553(a) to the extent they are applicable"—the rubric § 3582(c)(1)(A) instructs the court to follow. Four of those statutory sentencing factors are particularly germane here. The next four paragraphs discuss them.

#### 1. Nature and Circumstances of the Offense[4]

In March 2015, the Topeka, Kansas Police Department received information from an anonymous source that Mr. Soto was distributing methamphetamine, marijuana, and cocaine. Doc. 69 at 5 (PSR ¶ 13). The source advised that Mr. Soto received large shipments of illegal

---

[4] The facts discussed in parts 1–4 come from the PSR, which Mr. Soto did not object to in any respect. Doc. 69 at 18 (PSR ¶ 96).

7

drugs from California and Arizona, which he divided and provided to associates for distribution. *Id.*

Then, on April 15, 2015, officers stopped a white Ford pickup truck with Arizona license plates in Topeka. *Id.* (PSR ¶ 14). Officers identified the driver as Mauricio Aguilera. *Id.* Mr. Aguilera had $4,500 cash with him. *Id.* Mr. Aguilera admitted he lived in California and had received a phone call from Mr. Soto before leaving California a few days before asking if he wanted to make $4,500. *Id.* at 6 (PSR ¶ 15). During the phone call, Mr. Soto instructed Mr. Aguilera to drive to a Jack-in-the-Box restaurant in Phoenix, Arizona. *Id.* When Mr. Aguilera arrived at the restaurant, he called Mr. Soto. *Id.* Mr. Soto directed Mr. Aguilera to drive a white Ford pickup truck—which was at the restaurant—to Topeka. *Id.* (PSR ¶ 16). While Mr. Aguilera was inside the restaurant, Mr. Soto arranged for someone to move Mr. Aguilera's luggage from his car to the pickup truck. *Id.* Mr. Soto informed Mr. Aguilera that two pounds of methamphetamine had been placed in his luggage during the transfer. *Id.*

Mr. Aguilera then drove the pickup truck to Topeka as Mr. Soto had instructed. *Id.* (PSR ¶ 17). When Mr. Aguilera arrived, he contacted Mr. Soto and gave him the luggage containing the methamphetamine. *Id.* A search of Mr. Soto's house revealed six packages of methamphetamine, totaling 2721.46 grams. *Id.* at 5, 6 (PSR ¶¶ 14, 18). Mr. Soto admitted that Mr. Aguilera had brought him the packages. *Id.* at 6 (PSR ¶ 18).

To conclude with the obvious, Mr. Soto committed a serious felony offense. The nature and circumstances of this offense do not favor Mr. Soto's motion.

### 2. History and Characteristics of the Defendant

Before this offense, Mr. Soto had two drug-possession convictions—in 2011 and 2015—in Shawnee County, Kansas, District Court. *Id.* at 8–9 (PSR ¶¶ 37–38). He also has a possession

of a firearm by a prohibited person conviction in Shawnee County. *Id.* at 9 (PSR ¶ 38). From a health perspective, Mr. Soto is morbidly obese and suffers from hypertension. Doc. 94 at 6–8. Although Mr. Soto's criminal history weighs against his request, his comorbidities favor his request. This factor is neutral in the analysis.

### 3. The Need for the Sentence to Reflect the Offense's Seriousness, to Provide Just Punishment, and to Afford Adequate Deterrence to Criminal Conduct

When the court sentenced Mr. Soto, it adhered to the statutory mandate that it impose a sentence that was "not greater than necessary." Mr. Soto received a significant but, in context, appropriate sentence. Reducing his sentence by more than 40% would produce a sentence that no longer reflects the seriousness of Mr. Soto's criminal conduct. Likewise, such a reduced sentence no longer would furnish adequate deterrence to criminal conduct or provide just punishment. These factors weigh against Mr. Soto's motion.

### 4. The Sentencing Range Established for the Applicable Category of Offense Committed by the Applicable Category of Defendant

Reducing Mr. Soto's sentence to the time he has served so far would reduce it well below the applicable Guidelines range. No new circumstance justifies such a disparity.[5]

### C. Conclusion

In sum, the pertinent sentencing factors in 18 U.S.C. § 3553(a) do not favor the reduction Mr. Soto's motion seeks. Indeed, the primary factor favoring his request is the fact that he regrettably suffers obesity and hypertension. The court recognizes that these conditions have the potential to increase the severity of the sentence beyond the 120 months already imposed. *United States v. Mel*, No. CR TDC-18-0571, 2020 WL 2041674, at *3 (D. Md. Apr. 28, 2020)

---

5   The court is mindful of the other factors identified by § 3553(a). They are not pertinent, however, to the current motion.

("The fact that Mel has been incarcerated . . . during a serious outbreak of COVID-19 inside the facility sufficiently increased the severity of the sentence beyond what was originally anticipated . . . ."). But these factors haven't increased the sentence's severity to the point where an approximately 64-month custody sentence is sufficient. The court thus denies Mr. Soto's Motion for Compassionate Release (Doc. 88).

**IT IS THEREFORE ORDERED BY THE COURT THAT** Mr. Soto's Motion for Compassionate Release (Doc. 88) is denied.

**IT IS SO ORDERED.**

Dated this 28th day of August, 2020, at Kansas City, Kansas.

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**